JOHN P. WHALEN *vs.* CITY FORESTER OF THE CITY OF WALTHAM & another.

Middlesex.   April 6, 1932. — May 20, 1932.

Present: RUGG, C.J., WAIT, SANDERSON, & DONAHUE, JJ.

*Civil Service. Municipal Corporations*, Officers and agents. *Waltham.*

Under the charter and ordinances of the city of Waltham, Plan B of G. L. c. 43, as amended, the mayor was the proper officer to give a hearing under G. L. c. 31, § 43, to an employee classified under civil service in the forestry department who had received from the city forester on February 27, 1931, a notice that he would be laid off on

February 28 owing to a reduction in the appropriation for that department for the year, and who had written to the forester and the mayor requesting a hearing.

Such laying off was in legal effect a suspension.

Upon a petition for review in the District Court by the employee who was laid off in the circumstances above described, it appeared that the judge of the District Court found that the mayor acted for economic reasons in reducing the appropriation and that the suspension was not made without proper cause or in bad faith, and affirmed the laying off. *Held,* that no manifest error of law was disclosed, and that the decision of the District Court was final and conclusive.

PETITION, filed in the Supreme Judicial Court for the county of Middlesex on July 3, 1931, for a writ of mandamus, described in the opinion.

The petition was referred to an auditor, and afterwards was heard by *Crosby,* J., upon the auditor's report. Material facts found by the auditor are stated in the opinion. The petition was ordered dismissed as a matter of law. The petitioner alleged exceptions.

*J. J. Flynn,* (*J. I. Rooney* with him,) for the petitioner.

*P. J. Duane,* (*J. J. Foster* with him,) for the respondents.

SANDERSON, J. Four petitions for reinstatement by employees in the forestry department of the city of Waltham were filed. The pleadings in the case of Whalen alone are printed, but the bill of exceptions states that the four cases were "consolidated," the facts relating to the four employees are stated in it, and the parties have argued questions as to all four so far as they differ. The proceeding is considered as it has been presented by the parties and as it was treated by the single justice. The four employees received notices on February 27, 1931, signed by the city forester, that they would be laid off on the twenty-eighth day of February, 1931, owing to a reduction in the appropriation for that department for the year 1931. The respondents are respectively the city forester and the mayor of Waltham. Upon receiving the notices they all wrote the city forester asking for a public hearing and made similar requests of the mayor. The city forester notified Whalen that the matter had been referred to the mayor, who gave notice to each petitioner of the time when he might have a hear-

ing at the mayor's office. All of the petitioners were present on the date set. Whalen was represented by counsel, and "by agreement the hearing was postponed . . . and was held before the Mayor" at a later date. The petitioners other than Whalen took no active part in the hearing, apparently being willing to rest their cases on that made out by him. None of them made any claim that this hearing did not conform to law or civil service regulations. On March 14, 1931, the mayor sent to each petitioner a letter in the following terms: "At the hearing held at City Hall, Waltham, on March 11 and 12 current, when the status of several persons connected with our Forestry Department, one of whom you were, was being considered please be advised that no charges have been preferred against you, nor were any stated or heard, directly or indirectly. You were not removed from the Forestry Department, nor were you suspended. If it appears in the immediate or remote future that it is necessary to put men to work on work similar to that which you have been accustomed to do in the Forestry Department, it is my purpose to put such persons to work as under the civil service rules are entitled to the same. Very truly yours, PATRICK J. DUANE."

On March 30 the petitioner Whalen filed in the District Court a petition for review. After notice to him, a special judge of that court gave a hearing on the petition, and rendered a decision in part of the following tenor: "The action against the petitioner was taken for economic reasons only and it was admitted that there was no fault to be found whatsoever with his character or with his work. I, therefore, find under the provisions of G. L. [c. 31,] § 45, that the suspension of the petitioner was not made without proper cause or in bad faith and hereby affirm such action." The petitioners Quinn and Ferrick each filed a petition for review in the same court, but each of them on August 24, 1931, before any hearing thereon, filed in that court a discontinuance of his petition. The petitioner Qualters never filed a petition for review.

The work done by the forestry department had been

carried on for several years by ten to twelve men, with additional men from time to time. On March 1, 1931, two men, and at the time of the hearings six, were employed in the department. The petitioners were all regular men. In former years employees in the forestry department had at times been engaged in trimming underbrush in two parks when they were not in control of that department. All work thus done in these parks was performed at the request of the park commission. In the winter of 1930 and 1931 a citizens' committee, as a measure of relief to the unemployed, arranged with the park commission to let out the cutting of underbrush and other work on the areas of these two parks and the men so employed were designated by the committee as needy persons. Thus much work formerly done in winter months by men in the forestry department was performed by others in accordance with this agreement. Work such as the petitioners had done in previous years, however, still remained to be done in one of these parks.

For the fiscal year beginning February 1, 1930, the total appropriation for labor in the forestry department was in excess of $40,000. The respondent Ryan estimated the requirements of his department for labor for the fiscal year beginning February 1, 1931, at $18,000 for the regular employees and a few extra men as they might be needed. The mayor, however, recommended to the city council only $2,500, and that sum was appropriated as an item in the budget, and later an additional appropriation of $5,000 was recommended by the mayor, and made. The auditor found that the mayor had in mind, in recommending this reduced appropriation, a large abatement of taxes in the city, loss of taxable property, the probability that county taxes would be increased and income and corporation taxes would be less, and the probability of greater expenditures for the relief of the poor. The auditor also found that the mayor, in recommending the reduction in the appropriations in the forestry department, was actuated in part by a desire to clear up some internal dissensions in that department, but that his principal concern was the financial condition of the city.

The single justice entered an order dismissing the petitions as matter of law, and to this order the petitioners excepted.

The petitioners having been laid off were in legal effect suspended. *Bois* v. *Mayor of Fall River*, 257 Mass. 471, 472. *Reagan* v. *Mayor of Fall River*, 260 Mass. 529, 531. The contention is now made in behalf of the petitioners that the hearing given before the mayor was a nullity and that he rendered no decision, that the hearing should have been had before the head of the forestry department and the decision should have been made by him.

G. L. c. 31, § 43, provides in part that the employee "shall be given a public hearing . . . by the officer or board whose action affected him." The city charter of Waltham in force at the time of the action complained of was and still is Plan B, G. L. c. 43, as amended. The Waltham city ordinances provide: "Chapter 4, Section 3. 'Whenever it is provided in the following chapters that a board or officer shall have charge of a department or office, it shall be construed to mean that the board or officer, shall have such charge subject to the supervision, direction and control of the mayor.' Chapter 4, Section 22. 'The several heads of the departments, boards and commissions, shall, with the approval of the mayor make appointments of officers and employees whose appointments are not otherwise provided for.'" In *Peckham* v. *Mayor of Fall River*, 253 Mass. 590, 592, it was stated, in substance, that when the employee receives written notice stating the reasons in writing for his suspension "he as of right could have had a public hearing before the suspending officer or board, with right to a review of that decision by a district court."

By the terms of the statute the amount of an appropriation recommended by the mayor cannot be increased without his approval. G. L. c. 44, § 32. The recommendations for the reduced appropriations seem to have been amply justified by the reasons therefor stated in the auditor's report. Under Plan B the mayor is the chief executive officer of the city. G. L. c. 43, § 58. The city forester, in giving the petitioners notice that they would

be laid off with the reason stated therefor, must by reason of the terms of the ordinance be presumed to have been acting under the supervision, direction and control of the mayor. His action in this matter affected the petitioners. Furthermore, the petitioners asked for the hearing which was granted and a decision was rendered in each case by the mayor. Three of them asked for a review of that decision. None of them contended that the mayor could not hear the case and none of them has any valid ground for now contending that the hearing was a nullity or that the action taken by the mayor thereon was not a valid decision. See *Hill* v. *Mayor of Boston*, 193 Mass. 569, 573.

Qualters, Quinn and Ferrick are precluded from now maintaining a petition for writ of mandamus, the first because he took no steps to have the action of the mayor reviewed, and the other two because they have failed to exhaust the remedies given them by statute. *McLaughlin* v. *Mayor of Cambridge*, 253 Mass. 193, 199. *Reagan* v. *Mayor of Fall River*, 260 Mass. 529, 531. *Wallace* v. *Superintendent of Streets of New Bedford*, 265 Mass. 338. Whalen must also fail for the reason, among others, that the special judge of the District Court decided that the mayor acted for economic reasons in reducing the appropriation and that the suspension was not made without proper cause or in bad faith. He affirmed the action suspending Whalen. In this decision in the District Court no manifest error of law having been disclosed, the decision is final and conclusive as to the rights of Whalen. *McLaughlin* v. *Mayor of Cambridge*, 253 Mass. 193, 199. *Yunitz* v. *Chelsea*, 270 Mass. 179. *Whitney* v. *Judge of the District Court*, 271 Mass. 448.

The petitioners have not contended that the reduced appropriation was not a sufficient ground to justify their suspension, nor that they have been suspended unlawfully because the city was in a good financial condition or because there was work which employees in the forestry department might do, nor have they contended that their rights have been injuriously affected because of the fact

that the park commissioner permitted men in need of help to do some work which employees in the forestry department might have done.

*Exceptions overruled.*