624 A.2d 1036

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. EMMANUEL A. BULLOCK, DEFENDANT–
APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted March 30, 1993—Decided May 21, 1993.

Before Judges MICHELS, BILDER and BAIME.

*Zulima V. Farber*, Public Defender, attorney for appellant
(*James F. Anderson*, Designated Counsel, of counsel and on the
letter brief).

*Robert J. Del Tufo,* Attorney General, attorney for respondent (*Ann S. Williams,* Deputy Attorney General, of counsel and on the letter brief).

The opinion of the court was delivered by

BILDER, J.A.D.

Following a jury trial defendant was found guilty of official misconduct, *N.J.S.A.* 2C:30–2a, unlawful possession of a handgun, *N.J.S.A.* 2C:39–5b, and possession of a knife for an unlawful purpose, *N.J.S.A.* 2C:39–5d. In the same trial, drug charges were dismissed and the jury acquitted him of charges of armed robbery, kidnapping, terroristic threats, aggravated assault, and possession of a handgun for an unlawful purpose. He was sentenced to a custodial term of seven years for official misconduct, a concurrent term of five years for unlawful possession of a handgun, and a concurrent term of eighteen months for possession of a knife for an unlawful purpose.

In his brief on appeal, defendant makes the following contentions:

*POINT I*

THE CONVICTION FOR OFFICIAL MISCONDUCT MUST BE OVERTURNED FOR LACK OF EVIDENCE AND BECAUSE NOT GUILTY VERDICTS WERE RENDERED FOR THE UNDERLYING OFFENSES.

A.  The conviction for official misconduct must be overturned for lack of evidence.

B.  The conviction for official misconduct must be overturned because not guilty verdicts were rendered for the underlying offenses.

*POINT II*

THE CONVICTION FOR POSSESSION OF A KNIFE FOR UNLAWFUL PURPOSES MUST BE OVERTURNED FOR LACK OF EVIDENCE.

The Twelfth Count of Bergen County Indictment 51115–90, in pertinent part, charged that on January 9, 1989 defendant

did commit an act of official misconduct while a public servant by committing an act of armed robbery and/or kidnapping and/or terroristic threats and/or aggravated assault, said act relating to his position as a State Trooper with the New Jersey State Police, but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized or he is committing such act in an unauthorized manner, said act or acts being committed with the purpose to obtain a

benefit for himself or another or to injure or to deprive another of a benefit, contrary to the provisions of *N.J.S.A.* 2C:30–2a.

*N.J.S.A.* 2C:30–2a reads as follows:

A public servant is guilty of official misconduct when, with purpose to obtain a benefit for himself or another or to injure or to deprive another of a benefit:

a. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized or he is committing such act in an unauthorized manner

On appeal defendant contends, as he did in a motion to dismiss at the close of the State's case, that the evidence showed that at the time of the alleged acts, January 9, 1989, he had been suspended and was no longer a public servant. We agree with the defendant that, as the trial judge charged, his status as a public servant is an essential element of the offense and that the evidence did not permit a finding that he was a public servant on January 9, 1989.

Defendant had been a member of the New Jersey State Police. It was stipulated that he was suspended as of October 1988. It was the theory of the State that, although suspended, defendant was still in a paper sense a member of the State Police and required to comply with the terms of his suspension.

Evidence as to defendant's status was presented through the testimony of Sergeant LeRoy Vandermark of the State Police and a form advising defendant of his rights which the defendant acknowledged in writing. According to Vandermark, by the suspension defendant was stripped of all police powers, required to return all equipment which had been issued to him, and advised of the conditions of his suspension including the fact that he could no longer carry an off-duty weapon. He reverted, in Vandermark's words, to the status of an ordinary citizen. Defendant continued to be carried as a suspended member of the State Police until the suspension proceedings were completed, but apart from that paper status had no authority and no responsibility. Vandermark testified that defendant was obligated to abide by the rules and regulations governing behavior of a State Trooper but never defined or explained what those rules and regulations as they might apply to a suspended trooper were.

■ It is fundamental that the State is required to prove each element of the charged offense beyond a reasonable doubt. We are satisfied that the proofs presented to the jury do not permit such a finding as to defendant's status as a public servant. Indeed, to the contrary, the proofs show clearly that at the time of the alleged offense defendant did not occupy a position as a public servant.

In *State v. Silverstein*, 76 *N.J.Super.* 536, 185 *A.*2d 45 (App.Div. 1962), aff'd 41 *N.J.* 203, 195 *A.*2d 617 (1963), we noted:

> The offense of misconduct in office is aptly defined by Professor Perkins to be "corrupt misbehavior by an officer in the exercise of the duties of his office or while acting under color of his office." *Perkins, Criminal Law* (1957), *p.* 413. See 1 *Burdick, Law of Crime*, (1946), § 272, *pp.* 387–8. [*Id.* at 540].

and in *State v. Williams*, 189 *N.J.Super.* 61, 458 *A.*2d 1295 (App.Div.1983), certif. den., 94 *N.J.* 543, 468 *A.*2d 193 (1983), also dealing with misconduct in office, we said:

> We incline * * * toward the principle expressed in *Fredericks v. Board of Health*, 82 *N.J.L.* 200, 201 [82 *A.* 528] (Sup.Ct.1912), cited with approval in *State v. Goodman*, 9 *N.J.* 569, 583 [89 *A.*2d 243] (1952), that "An office is a place in a governmental system created or recognized by the law of the state which either directly or by delegated authority assigns to the incumbent thereof the continuous performance of certain permanent public duties." [*Id.* 189 *N.J.Super.* at 66, 458 *A.*2d 1295].

At the time of the alleged offense Bullock had neither duties nor authority which permitted him to act as a public servant. He was, as Vandermark repeatedly testified, an ordinary citizen. The suspension prohibited him from performing the functions of his office. *See Paull v. Pierce*, 68 *N.J.Super.* 521, 530, 172 *A.*2d 721 (Law Div.1961) (suspension of a police officer is a removal from active duty); *Murley v. Township of Raritan*, 117 *N.J.L.* 357, 358, 188 *A.* 739 (Sup.Ct.1936) (suspension is a temporary forced withdrawal from the exercise of office); *Sullivan v. Civil Service Com'n of City of Euclid*, 102 *Ohio App.* 269, 131 *N.E.*2d 611, 616 (1956) (suspension means to withhold the right to exercise the duties of the office of a policeman for a limited time). His acts with respect to the State Police identification card which he improperly retained may have been improper—perhaps illegal—

but they could not constitute acts while he was a public servant and did not constitute official misconduct.

Defendant's remaining contention as to his conviction of possession of a knife for an unlawful purpose is clearly without merit. *R.* 2:11–3(e)(2). The inappropriateness of the circumstances could readily be inferred from the presence of the illegally possessed handgun. *See State in the Interest of T.E.T.,* 184 *N.J.Super.* 324, 446 *A.*2d 177 (App.Div.1982), certif. den., 94 *N.J.* 508, 468 *A.*2d 169 (1983).

The convictions and sentence for unlawful possession of a handgun and possession of a knife for an unlawful purpose are affirmed. The conviction for official misconduct is reversed and the sentence therefor is vacated. The matter is remanded for correction of the judgment of conviction.